IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ex rel. THOMAS M. UBL, ) | |
| ) | |
| Relator, ) | |
| ) | |
| v. ) | 1:97mc117 |
| ) | 1:99mc81 |
| UNITED STATES OF AMERICA and ) | |
| SAVIN CORP., ) | |
| ) | |
| Defendants. ) | |

**M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on Relator's motion for relief from the Court's July 6, 1998 Order dismissing his case without prejudice.  Relator seeks to reopen his earlier action in order to obtain a share of funds that he claims are the proceeds of a Government settlement with the Defendant in his action.  For the following reasons, the Court will deny Relator's motion.

**I.  Background**

Relator, Thomas Ubl, previously filed two separate actions against Savin Corporation ("Savin") under the *qui tam* provisions of the Civil False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733.  Relator filed his first action in 1997, alleging that Savin was discounting its products sold to commercial customers and not informing the General Services Administration ("GSA") about these discounts during negotiations of Multiple Award

Schedule ("MAS") contracts for the provision of copying services and supplies to federal agencies.  After investigating Relator's allegations, the Government declined to intervene.  Relator's counsel then requested that the Court dismiss the case without prejudice,[1] and on July 6, 1998, the Court did so.

In November 1999, Relator filed a second *qui tam* action that raised the same allegations as his previous complaint.  The Government again informed Relator that it had found no basis for a FCA action and declined to intervene in the case.  In January 2000, Relator sought the Government's consent to voluntarily dismiss the second complaint, and the Government agreed.  On February 15, 2000, the Court entered an Order dismissing the second complaint without prejudice.

Relator claims that after its decision not to intervene in his complaints, the Government continued to investigate Savin and other MAS photocopier supplies/leasing contractors.  On January 31, 2006, Relator learned that the GSA Office of Inspector General had conducted an audit of the Savin MAS contract following the filing of Relator's complaint.  A July 16, 1998 report disclosed the results of the audit.  The audit recommended a three-year extension of the MAS contract with Savin

---

[1] Relator has consistently claimed that his attorney filed the request for dismissal without his consent.  Relator's arguments on this point have never resulted in a change in the status of the action that was dismissed on July 6, 1998.  If Relator's attorney acted without consent, Relator suffered no prejudice, as he was able to subsequently file a separate action containing the same allegations, which he later voluntarily dismissed.

for the period of October 1, 1998 through September 30, 2001, with a total sales amount of $38.2 million.  The audit also recommended a renegotiation of the maintenance pricing terms of the Government's contract with Savin and estimated that the renegotiation would save the Government approximately $4.2 million over the life of the contract extension.

Relator has filed a motion pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, seeking relief from this Court's July 6, 1998 Order of dismissal.  Specifically, Relator seeks to share in approximately $198.8 million that he argues the Government realized as proceeds from his FCA claims.[2]  Relator's motion is currently before the Court.

## II.  Standard of Review

Relator relies on Rule 60(b)(6), which "grants federal courts broad authority to relieve a party from a final judgment 'upon such terms as are just,' provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)."

---

[2] The sum of $198.8 million includes the $4.2 million in cost avoidance that would have resulted from GSA's total adoption of the Savin audit recommendations.  To reach the $198.8 million figure, Relator relies on an August 24, 2001 report of the GSA Office of Inspector General that recommended similar measures as those recommended at the conclusion of the Savin audit.  The August 24, 2001 report contains recommendations, which, if adopted, would purportedly result in a cost avoidance of approximately $198.8 million.  While Relator concedes that this amount largely reflects cost avoidance figures related to MAS contracts with vendors other than Savin, he contends that these were overcharges of the same type that he reported in his original complaint and that he "pointed the way" to such overcharges in his discussions with government officials.  Accordingly, Relator claims entitlement to share in the entire $198.8 million amount.

*Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 863 (1988). Rule 60(b)(6) does not specify the factors that justify relief, but the Supreme Court has noted that it provides courts with authority "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 614-615 (1949). Rule 60(b)(6) should only be applied in extraordinary circumstances. *Ackermann v. United States*, 340 U.S. 193, 202 (1950).

### III. Analysis

Relator claims that the FCA entitles him to share in the $198.8 million that was allegedly realized by the Government as a result of his allegations against Savin. Because the Government declined to intervene in either of Relator's civil actions, Relator's claim is based on 31 U.S.C. § 3730(c)(5), which provides, in pertinent part:

> the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, *the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.*

31 U.S.C. § 3730(c)(5) (emphasis added). This provision "preserves the rights of the original *qui tam* plaintiffs when the Government resorts to an alternate remedy in place of the original action." *United States ex rel. LaCorte v. Wagner*, 185

F.3d 188, 191 (4th Cir. 1999).  The original *qui tam* plaintiff's rights include the right to receive:

> not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement . . . paid out of such proceeds.  Such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs.

31 U.S.C. § 3730(d)(2).

Realtor relies on the following Ninth Circuit pronouncement in support of a broad interpretation of § 3730(c)(5):

> The language of § 3730(c)(5) places no restrictions on the alternate remedies the government might pursue.  It specifies broadly that the government may pursue "any alternative remedy available to [it]" (emphasis added). The term "any" is generally used to indicate lack of restrictions or limitations on the term modified.  *See Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1080 (9th Cir. 1999) ("According to Webster's Third New Int'l Dictionary (3d ed. 1986), 'any' means 'one, no matter what one'; 'ALL'; 'one or more discriminately from all those of a kind.'  This broad meaning of 'any' has been recognized by this circuit." (citations omitted)).

*United States ex rel. Barajas v. United States*, 258 F.3d 1004, 1010-1011 (9th Cir. 2001).  *See also United States ex rel. Bledsoe v. Cmty. Health Sys.*, 342 F.3d 634, 648 (6th Cir. 2003) ("[W]e are persuaded that the plain language of § 3730(c)(5) makes clear that a relator's participation rights are preserved when the government pursues the relator's claims through any means alternative to intervening in the qui tam action.").

Relator argues that § 3730(c)(5) encompasses the proceeds at issue in this case.

While the Court recognizes the broad interpretation that other circuits have given to § 3730(c)(5), it is also mindful that the statute only grants Relator the right to share in "the proceeds of the action or settlement," 31 U.S.C. § 3730(d)(2), or the proceeds of the "alternative remedy," 31 U.S.C. § 3730(c)(5). No matter how broadly the Court interprets the phrase "any alternative remedy," there must still be proceeds resulting from Relator's *qui tam* claims or from an investigation and alternative remedy resulting from Relator's *qui tam* claims. Unless the Government has received proceeds to remedy a claim of liability, Relator has no right of compensation.

Relator's *qui tam* complaint was based on a comparison that he made between the prices he, as a dealer in copier supplies, paid Savin and the prices listed on the Government's MAS contract with Savin. Relator alleged that Savin failed to disclose these dealer discounts to GSA during contract negotiations. GSA investigated Relator's allegations and decided to not intervene in the *qui tam* action based on its finding that the GSA contracting officer was aware of the larger discounts granted to dealers by Savin. According to the Government, the GSA contracting officer chose to base the contract prices on

Savin's pricing to commercial end user customers and not on the prices offered to dealers like Relator.

The funds in which Relator seeks to share simply are not proceeds of his *qui tam* claims. Relator's $4.2 million cost avoidance figure stems from a preaward audit of a proposed three-year extension of the Savin MAS contract. According to the declaration of Andrew Russionello,[3] GSA routinely conducts preaward audits of high-dollar contracts "to gather information about the commercial pricing practices of a prospective contractor so that the GSA contracting officer can use that information in negotiating contract prices for future purchases by Federal agencies." (Gov't Resp. Ex. 1, ¶ 3.) Thus, the audit and its resulting recommendations were not conducted to gather information to foster the settlement of any sort of liability claim based on a prior contract. Rather, they were conducted to furnish the GSA contracting officer with information he or she could use to negotiate an future contract. The $4.2 million figure merely represented the potential savings to the Government if the GSA contracting officer chose to follow the recommendations contained within the audit report. Such is completely unrelated to Relator's allegation that Savin failed to

---

[3] Russionello is the Director of Audit Planning, Policy and Operations for GSA's Office of Inspector General.

disclose discounts on copier supplies it offered to dealers during past contract negotiations.[4]

The remainder of the $198.8 million of which Petitioner claims a share merely represents a cost avoidance figure that GSA's Office of Inspector General reached by conducting routine preaward audits similar to the 1998 audit of the Savin contract.[5] In the August 24, 2001 report cited by Relator, the Office of Inspector General compiled the results of audits it conducted between 1990 and 1999 of MAS contracts with various companies. While Relator cites the report as evidence that the Government received $198.8 million as a result of his *qui tam* complaints, a cursory look at the report demonstrates that Relator's characterization is flawed.  In its report, the Office of Inspector General merely concludes that its preaward audits between 1990 and 1999 resulted in recommendations which, if followed, would have resulted in $198.8 million in savings to the Government.

There are at least four reasons why Relator is not entitled to the share of the $198.8 million sum that he claims.

---

[4] It bears mentioning that the audit concluded "that current pricing accorded the Government for the purchase of copiers and accessories under Savin's GSA contract reflect more favorable pricing than originally negotiated due to the competitive pressures in the marketplace." (Gov't Resp. Ex. 2, at 1.) The audit report thus reinforces the Government's decision not to intervene in Relator's *qui tam* claims due to their lack of merit.

[5] Presumably, the preaward audits that are compiled in the August 24, 2001 report include the July 16, 1998 audit of the MAS contract with Savin.

First, while the August 24, 2001 report states that the Government would have saved $198.8 million if GSA contracting officers had followed preaward audit recommendations, the report is equally clear that the Government never realized this sum. The Office of Inspector General found that contracting officers sustained only $3.8 million, or approximately two percent, of the potential savings that the Government could have realized through the recommended cost avoidance measures.  (Gov't Resp. Ex. 3, at 3.)  Thus, if Relator were entitled to share in any sum at all, that sum would be limited to $3.8 million.

Second, the report compiles the results of audits that occurred between 1990 and 1999.  Relator did not file his first *qui tam* action until 1997, and so for the majority of the relevant time period, it is utterly impossible that the recommended cost saving measures were at all traceable to Relator's complaint.  Third, each audit incorporated into the report was a routine matter and would have been conducted regardless of whether Relator filed a *qui tam* action against Savin.  The sheer number of preaward audits conducted before Relator filed his complaint in 1997 proves as much.  Finally, as stated above with respect to the Savin audit, the cost avoidance figure does not refer to any overcharges by contractors, any recovery of money by the Government, or the settlement of any sort of liability owed to the Government.  The cost avoidance

figure merely represents the amount of money the Government could expect to save in future contracts if it followed the recommendations of the GSA Office of Inspector General.

Thus, it is abundantly clear that the funds to which Relator lays claim are not the proceeds of a FCA action, settlement, or even an alternative remedy.  Rather, the $198.8 million sum claimed by Relator merely represents the costs that the United States could have avoided if GSA contracting officers had followed the recommendations of Office of Inspector General preaward audits conducted between 1990 and 1999.  This cost avoidance figure is not indicative of overcharges or FCA liability owed by the contractors and is not traceable to Relator's *qui tam* action.  Accordingly, Relator's motion to reopen the Court's dismissal Order and share in the alleged proceeds is utterly meritless.

## IV.  Conclusion

For the foregoing reasons, the Court will deny Relator's motion for relief from the Court's July 6, 1998 Order dismissing his case without prejudice.  An appropriate Order will issue.


April 18, 2006                                /s/
Alexandria, Virginia                    James C. Cacheris
                              UNITED STATES DISTRICT COURT JUDGE